IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ROTHSCHILD & CO. CONTINUATION HOLDINGS A.G., et al., | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civil Action No. 1:19-cv-03561-AT |
| VAL SKLAROV, et al., | : : : : | |
| Defendants. | : | |

## **MEMORANDUM OPINION ON JURISDICTIONAL RULING**

On October 10, 2019, the Court dismissed Defendants' Motion to Dismiss (Doc. 23) in an Order from the bench. (*See* Transcript, Doc. 34 at 4–5, 46–47.) The Court issues this written memorandum to address in further detail its exercise of jurisdiction over the Defendants and to clarify and modify the Court's Bench Order that encompassed Defendants America 2030 LLC, and America 2030 Capital Limited.

### **I.    Background**

On August 6, 2019, Plaintiffs filed a Complaint against Defendants, alleging trademark infringement-related claims under the Lanham Act, as well as under Georgia state law. (Complaint, Doc. 1.) Plaintiffs are part of the Rothschild & Co Group, which provides financial services throughout the world. (Doc. 1 at ¶ 27.)

The Rothschild & Co Group is controlled by members of the Rothschild family, "one of the most important and successful banking families in the world." (*Id.*)

The Rothschild & Co Group in the United States includes (1) Plaintiff Rothschild & Co US Inc., a registered broker-dealer that provides corporate finance, financial advisory, and general investment banking services, including to clients in Georgia; (2) Plaintiff Rothschild & Co Asset Management US Inc., which provides financial investment services to individuals and institutions, including clients in Georgia; and (3) Plaintiff Rothschild & Co Continuation Holdings AG, a Swiss joint-stock company that directly or indirectly owns the other Rothschild Plaintiffs. (*Id.* at ¶¶ 32–33.) Rothschild & Co Continuation Holdings AG is the registered owner of two U.S. trademark registrations for financial services.[1] This entity also licenses other Rothschild & Co entities to use the marks. (Doc. 1 at ¶ 36.)

The Complaint alleges the Rothschild marks have acquired substantial reputation and good will, distinctiveness, fame, and secondary meaning, and have become associated in the U.S. and the world with the financial services businesses of the Rothschild Group members operating in the U.S. (Doc. 1 at ¶ 38.) The Complaint further alleges that Defendant Val Sklarov and companies he controls (including several named defendants in this case) have been involved in litigation in the U.S. and Hong Kong in which Sklarov and his companies are alleged to have engaged in fraud in connection with stock loans. (*Id.* at ¶¶ 44–52.) The Complaint

---

[1] ROTHSCHILD (U.S. Reg. No. 3447667; and ROTHSCHILD & CO (U.S. Reg. No. 5614371). (Doc. 1 at ¶ 36.)

alleges Sklarov controls and directs the corporate defendants, caused the corporate defendants to be organized, and that he was the moving force behind the alleged infringements. (*Id.* at ¶¶ 18–19.) The Plaintiffs also filed a Motion for Preliminary Injunction (Doc. 6-1) seeking to enjoin Defendants from engaging in the allegedly infringing use of the ROTHSCHILD mark, anywhere in the world.

The main allegation in the Complaint – and the basis for seeking injunctive relief – is that Sklarov and the other Defendants have been infringing on Plaintiffs' trademark rights by using the mark "Bentley Rothschild" to identify financial services offered within the U.S.[2]

On October 1, 2019, in lieu of an Answer, Defendants filed what was styled "Defendants' Rule 12(b) Motions." (Doc. 23.) Defendants argued (1) the Complaint against Defendants Bentley Rothschild Capital Limited (St. Kitts and Nevis), Bentley Rothschild Financial LLC, America 2030 Capital Limited, and Black Rock Capital LLC, should be dismissed for lack of personal jurisdiction; (2) the Complaint failed to allege facts showing personal liability of Defendant Sklarov; (3) Count IV of the Complaint, alleging violation of O.G.C.A. § 10-1-451(b), should be dismissed because Plaintiffs did not allege a mark registered with the State of Georgia; (4) Count V, to the extent it seeks recovery of damages, should be dismissed with prejudice because O.C.G.A. § 10-1-370 allows only injunctive relief; (5) the Complaint should be dismissed or a more definitive statement required

---

[2] For more on the Plaintiffs' allegations and basis for seeking injunctive relief, see the Motion for Preliminary Injunction. (Doc. 6.)

because the Complaint is a "shotgun pleading"; (6) allegations relating to the Term Sheet should be stricken because the Court lacks subject matter jurisdiction over alleged acts of infringement occurring outside of the United States; and (7) certain allegations in the Complaint relating to Sklarov's alleged history of criminal conviction and "cybersquatting" should be stricken as scandalous. During the October 10, 2019 hearing, the Court denied Defendants' motion from the bench. (Doc. 34 at 4–5, 46–47.)

## II. Standard of Review

A plaintiff's complaint is subject to dismissal if there is a lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). Plaintiff bears the burden of establishing jurisdiction in this Court. *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000); *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010). "In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a *prima facie* case of jurisdiction over the movant, non-resident defendant." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).

A federal court "undertakes a two-step inquiry to determine whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Diamond Crystal*, 593 F.3d at 1257–58 (citation and quotations omitted). District courts in Georgia

4

cannot conflate these two inquiries because Georgia's long-arm statute[3] does not provide jurisdiction that is coextensive with due process. *Id.* at 1259. Instead, the long-arm statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." *Id.* (footnote omitted).

The Court construes the allegations in the complaint as true to the extent that they are uncontroverted by defendant's evidence. *Morris*, 843 F.2d at 492; *Allegiant Physicians Services, Inc. v. Sturdy Memorial Hosp.*, 926 F. Supp. 1106, 1112 (N.D. Ga. 1996; *Foxworthy v. Custom Tees, Inc.*, 879 F. Supp. 1200, 1207 n.10 (N.D. Ga. 1995). If the defendant submits affidavits challenging the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *Diamond Crystal Brands, Inc.*, 593 F.3d at 1257; *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Diamond Crystal*, 593 F.3d at 1257 (internal quotation marks omitted) (quoting *Meier*, 288 F.3d at 1269).

Four of the Defendants (termed the "Corporate Defendants") claim that the Court does not have personal jurisdiction over them. The first is Bentley Rothschild Capital Limited ("BRC SK"), which is a St. Kitts and Nevis entity.[4] The second

---

[3] O.C.G.A. § 9-10-91.
[4] This entity is not the same as a different Defendant, Bentley Rothschild Capital Limited ("BRC GA"), which is alleged to be a Georgia corporation.

5

entity is Bentley Rothschild Financial LLC ("BRF"), alleged to be a Wyoming limited liability company. The third entity is Black Rock Capital LLC ("Black Rock"), alleged to be a limited liability company created under the laws of the Bahamas.[5] The fourth entity is America 2030 Capital Limited ("America 2030 Corp."), alleged to be a Colorado corporation. A fifth entity, America 2030 Capital, LLC ("America 2030 LLC"), alleged to be a Colorado limited liability company, did not challenge exercise of personal jurisdiction over it, and did not join the Motion to Dismiss. However, since it appears on the basis of the record that America 2030 LLC is closely intertwined with America 2030 Corp., the Court examined its exercise of jurisdiction over both America 2030 entities.

Defendant Val Sklarov is alleged to be a Georgia resident (Doc. 1 at 6.), and Corporate Defendant Bentley Rothschild Capital Limited (Georgia) is alleged to be an entity formed and operating in Georgia (Doc. 1 at 6–7.). The Complaint plainly alleges adequate facts to support the Court's exercise of personal jurisdiction over these Defendants.

### A. The Court Exercises Jurisdiction Over Corporate Defendants BRC SK, BRF, and Black Rock

BRC SK's opposition to the Court's exercise of personal jurisdiction over it is based largely on the decision in *RMS Titanic, Inc. v. Zaller*, 978 F. Supp. 2d 1275 (N.D. Ga. 2013), in which Judge Duffey considered the exercise of personal jurisdiction over foreign defendants, and ultimately followed the analytical

---

[5] Black Rock is named in the suit because it filed an application with the USPTO to register BENTLEY ROTHSCHILD as a U.S. trademark.

framework from a First Circuit decision *McBee v. Delica Co., Ltd.*, 417 F.3d 107 (1st Cir. 2005) rather than the framework applied by the Eleventh Circuit. *Int'l Café, S.A.L. v. Hard Rock Cafe Int'l (U.S.A.), Inc.*, 252 F.3d 1274 (11th Cir. 2001) (applying framework from *Vanity Fair Mills, Inc. v. T. Eaton Co.,* 234 F.2d 633, 640 (2d Cir. 1956)).

*RMS Titanic, Inc.* involved a Lanham Act claim against an individual defendant and entities he controlled, which allegedly infringed on the trade dress of the plaintiff in exhibiting artifacts from the salvage of the Titanic. *See RMS Titanic, Inc. v. Zaller*, 978 F. Supp. 2d 1275 (N.D. Ga. 2013). Judge Duffey found there was no personal jurisdiction in Georgia over a Singapore company where the plaintiff did not allege any infringing activity by that company in the U.S. or any substantial effect on U.S. commerce caused by the Defendant's conduct. *Id.* at 1290–91. The Court viewed the fact that the Singapore company maintained an office in the U.S. and managed some accounting functions from that office as an insufficient predicate for the exercise of personal jurisdiction. *Id.* Judge Duffey also rejected the plaintiffs' "reverse alter ego" theory. *Id.* at 1302 (applying *Home-Stake Prod. v. Talon Petroleum*, 907 F.2d 1012 (10th Cir. 1990)). However, Judge Duffey deferred a ruling on personal jurisdiction over another defendant incorporated in Nevada and instead permitted limited jurisdictional discovery as to that entity. *Id.* Plaintiffs contend they do not rely on a "reverse alter ego" theory of personal jurisdiction over the Corporate Defendants. (Doc. 28 at 6–7, 10–11.) They maintain the Complaint alleges that each of the Corporate Defendants transacts business in

Georgia and that each of them use the allegedly infringing "Bentley Rothschild" mark in Georgia, either directly or through Sklarov acting as their agent. (*Id.* at 11.) The Complaint adequately alleges that some of the Corporate Defendants transact business in Georgia, including using the allegedly infringing mark here in connection with their business.

In *Int'l Café*, the Eleventh Circuit found that jurisdiction was appropriate "over extraterritorial disputes involving trademark infringement and unfair competition when: 1) Defendant is a United States corporation; 2) the foreign activity had substantial effects in the United States; and 3) exercising jurisdiction would not interfere with the sovereignty of another nation." *Int'l Café, S.A.L. v. Hard Rock Cafe Int'l (U.S.A.), Inc.*, 252 F.3d 1274, 1278 (11th Cir. 2001) (citing *Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952)). Although the Eleventh Circuit does not explicitly adopt the framework of the Second Circuit's *Vanity Fair* decision, that framework is employed throughout the Eleventh Circuit's opinion and is clearly the cornerstone of the Court's analysis. *See, e.g., Int'l Café, S.A.L.*, 252 F.3d at 1278 (citing *Vanity Fair Mills, Inc. v. T. Eaton Co.,* 234 F.2d 633, 643 (2nd Cir. 1956) ("[T]he absence of one of the [*Bulova* ] factors might well be determinative and [ ] the absence of both is certainly fatal."). All three factors are met here. The Corporate Defendants are either incorporated in the United States, or are alleged to be the alter egos of Sklarov, a Georgia resident, who allegedly disregards the separateness of the various entities in a way that abuses the corporate form. *See RMS Titanic, Inc. v. Zaller*, 978 F. Supp. 2d 1275, 1291 (N.D.

Ga. 2013) (quoting *Rasheed v. Klopp Enters., Inc.,* 276 Ga. App. 91, 95 n. 4 (Ga. Ct. App. 2005)). Even Defendants' counsel is unclear on the various corporate entities, and why they are organized the way that they are. (*See* Transcript, Doc. 34 at 28 ("I also share the Court's confusion concerning what is the interplay between all of these corporations.").) Lastly, there is simply no evidence or claim made whatsoever that the sovereignty of another nation might be interfered with by this Court's exercise of jurisdiction, or that there exists another case concerning this controversy elsewhere outside of the United States.

In support of their challenge, Defendants submit the affidavit of Val Sklarov, in which Mr. Sklarov flatly denies the allegations in the Complaint and attests that he does not "exercise dominion and control over Defendants or … disregard the separateness of those legal entities to such an extent that these entities are used by me as a mere instrumentality." (Doc. 23-2 at 2–3.) Plaintiffs submitted numerous exhibits in support of their Motion for Preliminary Injunction, as well as their Reply. (*See, generally,* Doc. 6 & Doc. 26.) Accordingly, where the evidence supplied in these declarations (and from other sources) conflicts, the Court construes them in the light most favorable to Plaintiff. *Diamond Crystal Brands, Inc.,* 553 F.3d at 1257.

The question is therefore whether, on the basis of these facts and inferences, the Court has personal jurisdiction over the nonresident Corporate Defendants. This requires examination of the Georgia long-arm statute.

The first step in the two-step inquiry under *Diamond Crystal* is to determine whether the exercise of personal jurisdiction is appropriate under the Georgia long-arm statute. *Diamond Crystal*, 593 F.3d at 1257–58. Subsection 1 of the Georgia long-arm statute allows the exercise of personal jurisdiction over a nonresident when he or she "[t]ransacts any business within this state." O.C.G.A. § 9-10-91 (1). Federal courts interpret the long-arm statute literally. *Diamond Crystal*, 593 F.3d at 1264.

There is a three-part test to determine whether long-arm jurisdiction exists under subsection (1). The first part asks whether "the nonresident defendant has purposefully done some act or consummated some transaction in this state . . . ." *Meyn Am., LLC v. Tarheel Distribs., Inc.*, 36 F. Supp. 3d 1395, 1402–03 (M.D. Ga. 2014) (citing *Amerireach.com, LLC v. Walker*, 290 Ga. 261, 269, 719 S.E.2d 489, 496 (Ga. 2011)). The second part examines whether the cause of action "arises from or is connected with such act or transaction," and the third part is whether "the exercise of jurisdiction by the courts of the state does not offend traditional fairness and substantial justice." *See Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 518–519 (Ga. Ct. App. 2006).

The second step of the two-step inquiry under *Diamond Crystal* is to determine whether the exercise of personal jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Diamond Crystal*, 593 F.3d at 1257–58. Due Process considers,

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–73, 474–75 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–14 (1984); *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945); *see also Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220–21 (11th Cir. 2009); *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 630–31 (11th Cir. 1996)).

The Court is satisfied that Defendants Bentley Rothschild Capital Limited – St. Kitts and Nevis (BRC SK) and Bentley Rothschild Financial LLC – Wyoming (BRF), transact business in Georgia sufficient to satisfy the long-arm statute, and therefore the Court's exercise of personal jurisdiction over them is proper. The Complaint sufficiently alleges that these companies hold themselves out as doing business and using a trademark in providing financial services from a location in Georgia, and this constitutes transacting business in Georgia within the meaning of O.C.G.A. § 9-10-91(1). The documents submitted by Plaintiffs show that BRC SK and BRC GA, the two entities carrying on business as "Bentley Rothschild Capital Limited," transact business in Georgia. These include (1) the Website, which offers to supply a broad range of financial services from the U.S. to non-U.S. residents

from an Atlanta office (Doc. 27-4), and (2) the Term Sheet, identifying the lender as "Bentley Rothschild Capital Limited, member of Rothschild family of companies" and the Atlanta office as the only U.S. address for "Bentley Rothschild Capital Limited." (Doc. 1-14). Screenshots of the Bentley Rothschild website show that Defendants boast "325 Active Clients" across "6 Headquarters Worldwide" for a "96 Satisfaction Rate." (Doc. 1-11 at 3–4.) Another portion of the website boasts that "BENTLEY ROTHSCHILD is one of the largest infrastructure fund managers globally, having raised more than $10 billion of capital since the inception of the business in 2006." (Doc. 1-13 at 29–30.) The Complaint alleges that the Defendants' allegedly infringing activities have a substantial effect on commerce in the United States, and the materials supplied by the Plaintiffs – materials allegedly created by Defendants – support this claim.

Defendants offered only the affidavit of Val Sklarov to rebut the allegations relating to personal jurisdiction, but the affidavit is merely a series of denials from Mr. Sklarov, and does not tend to disprove any of the allegations in the Complaint. For example, Mr. Sklarov denies that he controls the Defendant companies, or that they all have connections to Georgia, and he says that that Term Sheet was "issued to a citizen of Indonesia residing in Indonesia for Indonesian stock prepared by Bentley Rothschild Capital Limited, a St. Kitts and Nevis entity and there is no nexus whatsoever to the United States of America." (Doc. 23-2 at 3.) But the Term Sheet itself lists four different office locations under Contacts: Bahamas, Offshore; Nevis, Offshore, USA; and United Kingdom. (Doc. 1-14.) The "USA" address is in

Atlanta, Georgia. (*Id.*) Although Defendants want the Court to view the two "Bentley Rothschild Capital Limited" entities as distinct, this document – which is held out to potential customers – clearly combines them.[6] There is no specification on the Term Sheet as to whether the "Bentley Rothschild Capital Limited" entity making this offer is incorporated in St. Kitts and Nevis (as Sklarov claims) or in Georgia (as Plaintiff alleges). What's more, the Term Sheet lists addresses for both locations, indicating strongly that these entities are used interchangeably, and are held out as one and the same. Despite Mr. Sklarov's statement, the nexus between the Term Sheet and the United States of America is clear: the company was, at the very least, holding itself out as doing business from Georgia, among other locations.

The Plaintiffs have provided detailed factual allegations reflecting that BRF is transacting business in Georgia through its agent, Sklarov, who in turn does not dispute he is a resident of Georgia. The Plaintiffs thus have sufficiently alleged that Sklarov took actions on behalf of BRF and BRC SK entities in Georgia as their agent, and therefore this Court may exercise personal jurisdiction over BRF and BRC SK. *See* O.G.C.A. § 9-10-91(1).

The Complaint further sufficiently alleges Defendant Black Rock's transaction of business in Georgia, through its attempt to register BENTLEY

---

[6] *Cf. RMS Titanic, Inc. v. Zaller*, 978 F. Supp. 2d 1275, 1291 (N.D. Ga. 2013) ("To justify piercing the corporate veil, 'the plaintiff must show [that] the owner abused the corporate form by disregarding the separateness of legal entities by commingling [funds] on an interchangeable or joint basis or confusing the otherwise separate properties, records, or control.'") (quoting *Rasheed v. Klopp Enters., Inc.,* 276 Ga. App. 91, 95 n. 4 (Ga. Ct. App. 2005)).

ROTHSCHILD as a U.S. trademark for financial services virtually identical to those furnished by Plaintiffs under the ROTHSCHILD Marks. Black Rock is closely associated with the other Defendants over which the Court has personal jurisdiction: its General Counsel, JT Singh, who filed the application to register with the USPTO (Doc. 1-1), also represented Sklarov, BRC SK, and BRF in pre-litigation correspondence with counsel for Plaintiffs (Doc. 1-17), and has appeared as co-counsel for Defendants in this action. (Transcript, Doc. 34 at 3–4). Black Rock seeks to register rights in the BENTLEY ROTHSCHILD mark for use by the Bentley Rothschild entities in U.S. commerce, which they conduct from Georgia. Any use of the BENTLEY ROTHSCHILD mark by the Bentley Rothschild entities in Georgia inures to the benefit of the claimed owner of the mark, Black Rock. *See* 15 U.S.C. § 1055 ("Where a . . . mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the . . . applicant for registration..."). By filing the application and authorizing the business use of the BENTLEY ROTHSCHILD mark in Georgia by the Bentley Rothschild Defendants, Black Rock has transacted business in the state and is subject to personal jurisdiction under O.C.G.A. § 9-10-91(1).

### B. Limited Jurisdictional Discovery Regarding Defendants America 2030 Capital, LLC, and America 2030 Capital Limited is Warranted

In *America 2030 Capital Limited v. Prescient Investment Ltd., et al.*, Case No. 1:18-cv-04875-AT (N. D. Ga. 2018) ("*Prescient*"), a case currently before this Court, a defendant alleged that Sklarov used different corporations with some

variation of the name "America 2030 Capital" (incorporated in either Colorado, Hong Kong, or the United Kingdom) in a "shell game" to falsely create diversity in the litigation. (*Prescient*, D.'s Resp., Doc. 7-1 at 4–5). In a consent order presented to the Court by the parties, counsel for the Plaintiff, America 2030 Capital Limited, acknowledged that Val Sklarov controls the America 2030 Group of companies. (*Prescient*, Doc. 16, at 4–5 ("The Plaintiff [America 2030 Capital Limited - Colorado] and the lender [America 2030 Capital Limited – Hong Kong] are both controlled by Val Sklarov (also known as Vladimir Sklarov) as part of the America 2030 group of companies.").) It is apparent that the America 2030-related Defendants have at least once legally stipulated to the statement that Val Sklarov controls the companies.

The allegations in the Complaint and the Motion for Preliminary Injunction adequately allege that Sklarov controls the Bentley Rothschild group of companies and has created multiple "Bentley Rothschild" companies, similarly to how he has structured the America 2030 group of companies. For purposes of personal jurisdiction, the Court considers all of the Bentley Rothschild companies to be acting as a single enterprise and to transact business in Georgia through their principal agent, Val Sklarov.

The Plaintiffs contend that the America 2030 Defendants have participated in the U.S. activities of the Defendants over which the Court has personal jurisdiction. For example, "America 2030 Capital" is identified as registrant of the domain www.bentleyrothschild.com. (Doc. 1-10.) Defendant America 2030 LLC

issued a press release on January 12, 2019, in which it announced "Stock Loan Financing in . . . USA," and that America 2030 LLC "is utilizing Bentley Rothschild Capital Ltd. of Nevis and Bahamas to structure and fund several of its global stock loan transactions. The executives at America 2030 Capital believe that the Bentley Rothschild name will be a major player in structuring and funding publicly traded companies and its major shareholders for years to come." (Doc. 1-15). But the Court finds the foregoing limited facts insufficient to provide a foundation for the Court's exercise of personal jurisdiction over America 2030 LLC and America 2030 Corp. at this time.

The Plaintiffs assert that the Complaint adequately alleges facts which support the Court's exercise of personal jurisdiction over all of the Defendants, but the Plaintiffs also sought leave to conduct limited jurisdictional discovery in the event the Court did not find an adequate basis for exercising personal jurisdiction over some of the Defendants. (Doc. 28 at 11 n.3.) A qualified right to take jurisdictional discovery exists where the jurisdictional question is "genuinely in dispute[.]" *Eaton v. Dorcester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982). In such circumstances, a plaintiff "should be given [the] opportunity to discover facts that would support his allegations of jurisdiction." *Majd-Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984). Plaintiffs have shown some evidence of concerted interaction between at least one of the America 2030 Capital defendants and the BRC entities, and discovery may show Georgia contacts by the America 2030 Capital defendants sufficient to meet the Georgia long-arm statute's

requirements. What's more, in the *Prescient* litigation, the America 2030 group seeks to bring that case in this same Court, stating in the Complaint, "[t]he Plaintiff America 2030 is an international Lending Company incorporated in Colorado but domiciled in Georgia with principal address at 1301 Shiloh Rd, Suite 1231, Kennesaw[,] Georgia, 30144." (*Prescient*, Doc. 1 at 1.) Plaintiff in that case further states that jurisdiction is proper in this Court because "the case is international between the Plaintiff, a Corporation domicile[d] in Georgia and … foreign corporations domiciled in Hong Kong." (*Prescient*, Doc. 1 at 2.) In that same Complaint, Plaintiff alleges, "[v]enue is proper as [a] substantial transaction regarding this contract was carried out between the Plaintiff and the Defendants in Georgia over the Internet." (*Id.*) The "substantial transaction" referred to in that portion of the Complaint involved emails sent from Val Sklarov concerning the contract in question in that matter. (*See Prescient*, Doc. 21-1 at 11–16 (emails).) As a result of the contradictory or confusing statements regarding the location and organization of America 2030, it is unclear to the Court whether there is any meaningful distinction between the various America 2030 entities, as well as whether the facts as alleged are sufficient for the Court to exercise personal jurisdiction over the America 2030 group of companies.

While Plaintiffs' Complaint does not yet set forth an adequate factual basis upon which the Court can definitively exercise personal jurisdiction over the America 2030 Defendants, the Court finds that jurisdictional discovery is

appropriate given the facts currently alleged as well as evidence adduced in Plaintiffs' Motion for Preliminary Injunction.

## II. Conclusion

For the reasons stated above, the Court finds that the Complaint sets forth an adequate factual basis upon which the Court may exercise personal jurisdiction over Defendants Val Sklarov (Georgia), Bentley Rothschild Capital Limited (Georgia), Bentley Rothschild Capital Limited (St. Kitts and Nevis), Bentley Rothschild Financial LLC (Wyoming), and Black Rock Capital LLC (Bahamas).

While Plaintiffs' Complaint does not yet set forth an adequate factual basis upon which the Court can definitively exercise personal jurisdiction over Defendants America 2030 LLC, and America 2030 Capital Limited, the Court finds that jurisdictional discovery is appropriate given the facts currently alleged as well as evidence adduced in Plaintiffs' Motion for Preliminary Injunction. The Court therefore **GRANTS** limited jurisdictional discovery in connection with these specific defendants (America 2030 LLC, and America 2030 Capital Limited) for a period not to exceed **sixty (60) days**. No later than **fourteen (14) days** after the conclusion of this jurisdictional discovery period or at any time prior to that date, Plaintiffs **SHALL** file a brief addressing the factual and legal basis for their assertion that jurisdiction over these Defendants (America 2030 LLC, and America 2030 Capital Limited) may be properly invoked in this Court, with supporting record evidence as appropriate. Defendants' response, with record evidence as appropriate, shall be due within **fourteen (14)** days of the filing of Plaintiffs'

brief. Plaintiffs' Reply brief is due **ten (10)** days after the filing of Defendants' brief.

**IT IS SO ORDERED** this 13th day of February, 2020.

_____
**AMY TOTENBERG**
**UNITED STATES DISTRICT JUDGE**